**E-FILED**

Monday, 31 October, 2005  03:23:46 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| R & A Productions Inc., | ) | |
| Plaintiff | ) | |
| | ) | |
| | ) | Case No. 03-1057 |
| | ) | |
| City of Peoria, Illinois, | ) | |
| Defendant | ) | |

## ORDER

The parties have consented to have this case heard to judgment by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and the District Judge has referred the case to me.  Now before the court are the parties' cross motions for summary judgment (Documents #36 and 38).  For the following reasons, plaintiff's motion #36 is granted and defendant's motion #38 denied.

## UNDISPUTED FACTS

The parties have agreed on a statement of facts for purposes of this motion. Defendant asserts that some[1] of those admittedly-true facts are nonetheless immaterial. To the extent that the Court recites some of those facts herein, the immateriality argument has been rejected.  The converse is also true: if the facts are not recited, the Court has determined that they are immaterial.

This is a section 1983 action brought by R & A Productions, Inc., d/b/a Mulligan's (hereinafter Mulligan's).  Mulligan's is a liquor licensee of the City of Peoria.  Plaintiff challenges the constitutionality of a portion of the City's liquor ordinance, both facially and

---

[1]The dispute about materiality is limited to paragraphs 3 through 8 and 9 through 16 of the statement contained in Plaintiff's Motion for Summary Judgment.

as being over broad as applied to the Plaintiff, asserting that the ordinance infringes on the right of free speech guaranteed by the First Amendment.

The original version of the Ordinance in question was enacted in 1977. Its stated purpose was to eliminate the "deleterious effect [of adult entertainment] on both the business and residential segments of liquor licensees in business districts immediately adjacent to residential neighborhoods." The ordinance was amended in 1986; that version contained a preamble that stated the purpose as protecting "from possible detrimental effects of live entertainment at licensed establishments or the display of sexually explicit forms of live entertainment in or near residential areas."

There was a third amendment to the Ordinance in 2001 (hereinafter "2001 Ordinance"). Corporation Counsel Randall Ray stated in a November 6, 2001 letter to the Mayor and the City Council  that the reason for the amendment was to close certain loopholes with respect to sexually explicit entertainment in licensed establishments. The minutes of the November 6, 2001 City Council meeting indicate a report to the Council by Ray that there were "certain things that would ordinarily be considered an adult use that were not specifically prohibited in the Liquor Code, so the purpose of the proposed ordinance was to add to the list of activities that could not be conducted in a licensed establishment." The amendment was adopted without a dissenting vote.

The 2001 Ordinance was in effect at the time this lawsuit was filed. [City of Peoria Code Ch. 18 § 3-14].  It provided as follows:

> It shall be unlawful for any licensed establishment or premises, not licensed as an adult business, to offer or allow any live entertainment or conduct of the following types:
> *       *       *

2

(3)     Actual or simulated display of the pubic hair, anus, vulva, genitals, buttocks, or female breast below a point immediately above the top of the areola.

The 2001 Ordinance was amended in 2005 (i.e. during the pendency of this litigation and after this Court's last summary judgment ruling)(hereinafter "2005 Ordinance").  The 2005 Ordinance includes a section entitled "Purpose" and a section entitled "Findings." These sections, which are entirely new, along with the amended substantive part of the ordinance, provide in pertinent part:

(a) Purpose.  It is the purpose of this ordinance to regulate nude conduct in liquor establishments that are unlicensed as an adult business ... in order to promote the health, safety, and general welfare of the citizens of the City, and to establish reasonable and uniform regulations  to prevent the deleterious secondary effects of nude conduct in liquor establishments not licensed as an adult business.  The provisions of this ordinance have neither the effect of imposing a limitation or restriction on content or reasonable access to the message intended to be conveyed by erotic dancers or performers.  Similarly, it is neither the intent nor effect of this ordinance to restrict or deny access by adults to semi-nude conduct protected by the First Amendment.  This ordinance does not apply to theaters, performing art centers, civic centers and dinner theaters and other similar businesses that have a liquor license w here live dance, ballet, music, and dramatic performances of serious artistic, literary, scientific or political merit are offered on a regular basis and in which the predominant business or attraction is not the offering of entertainment which is intended for the sexual interests or titillation of customers.

(b).  Findings.  Based on the evidence of the adverse secondary effects of nude conduct, along with the consumption of alcohol in liquor establishments, presented in hearings and reports made available to the City, and on findings incorporated in [citing First Amendment case law]; and on reports of secondary effects occurring in and around, inter alia, bars that feature topless, bottomless or nude conduct, including but not limited to, [citing studies from other cities], the City finds:

(1)     Semi/Nude Conduct, coupled with the consumption of alcohol, is associated with a variety of adverse secondary effects including but not limited to, lewdness, public indecency, sexual harassment, violence, public intoxication, disorderly conduct, and the sexual exploitation of nude conduct.

(2)     Liquor establishments are located throughout the City in both residential and commercial areas.   The location of liquor establishments in residential and commercial areas has a negative

impact on surrounding properties and liquor establishments that provide bottomless, topless, or otherwise semi-nude conduct decreases further the value of surrounding properties, both residential and commercial alike.

(3)     Each of the foregoing negative secondary effects constitute a harm which the city has a substantial government interest in preventing and/or abating.

(4)     It is consistent with the health, safety, and general welfare of the city to restrict the nude conduct that occurs in liquor establishments that do not have an adult use license.

(c)     Prohibited Conduct.  It shall be unlawful for any Class A, B, C, or G licensed establishment or premises, not licensed as an adult business, to offer or allow any person to engage in any of the following conduct:

*       *       *       *       *

(2)     Actual display of pubic hair, anus, vulva, genitals, buttocks or the female breast below a horizontal line across the top of the areola. This definition shall include the entire lower portion of the human female breast, but shall not include any portion of the cleavage of the human female breast, exhibited by a dress, blouse, shirt, leotard, bathing suit, or other wearing apparel provided the areola is not exposed in whole or in part.

R & A Productions Inc. operates a bar and restaurant on North Sterling Avenue in Peoria, Illinois.  The bar/restaurant is known as Mulligan's.  Mulligan's holds a Class B-1 liquor license from the City, authorizing it to serve alcohol on premises.  It does not and never has held an adult entertainment license.  North Sterling Avenue itself is a commercial area, evidenced by a shopping mall, a number of strip malls and other shopping areas, numerous restaurants, offices, hotels and gas stations.  There are residential areas around North Sterling Avenue.

During 2002, Mulligan's conducted a wet t-shirt contest on Thursday nights. Mulligan's rules for the contest required contestants to keep their pants on and, if a

contestant wanted to raise her shirt, she had to wear pasties provided by the bar.  " Large squirt guns loaded with water were auctioned off to the highest bidders in the audience. The winner of the contest was determined by audience applause, and Mulligan's paid the winner $100.  The contest was emceed by a local radio personality.

Terry Pyatt, a police officer for the City whose assignment was liquor investigator, received a complaint from Big Al's about the contest at Mulligan's, as well as from several other unnamed sources.  He wrote a letter to Mulligan's on Nov. 19, attaching a copy of a City ordinance prohibiting "sexually explicit entertainment" without an adult use permit (which Mulligan's did not have).  In a responding letter, Balaco described the contest.  No citation was issued.

Thereafter, counsel for Mulligan's consulted with James Murphy, one of the attorneys in the City's office of corporate counsel, about interpretation of the Ordinance and whether covering the aureola with pasties was sufficient to comply with that ordinance. Following discussions among other attorneys in that office, the City's attorneys ultimately concluded that the ordinance should be given a literal interpretation:  the female breast could not be displayed below the aureola, even if  pasties were used.  Murphy opined in a November 22 letter to Mulligan's counsel that the contest as described above would not be in compliance with the ordinance.  Murphy's letter was not reviewed by the Corporation Counsel, Randall Ray, before it was sent.  No one on behalf of Mulligan's questioned Ray about the opinion contained in the opinion letter.  Mulligan's discontinued the contests and saw its revenues for Thursday nights decline.

In December, Balaca saw an advertisement showing a male dance group, known as Mantasia, dancing in bikini swim trunks.  He received the group's package, which also

included a picture of one of the dancers.  He arranged for Mantasia's performance at Mulligan's.  During their performance, the dancers wore what is called a three-quarter back swimsuit that only partially covered their buttocks.  In addition, they apparently pulled down the side straps of their swim suits during the performance.

Once again, Pyatt received word of a complaint from Big Al's, as well as several reports from other police officers.  He went to Mulligans and spoke to an employee, Michelle Roling.  When asked if Mulligan's had male dancers, Roling responded affirmatively.  When asked if they were exposing their buttocks, she answered affirmatively.[2]  Pyatt spoke with Murphy, who concurred with Pyatt's opinion that the male dance routine was in violation of the ordinance.  Based on this conversation, Pyatt issued a citation for violation of Ordinance 3-14.  The citation remains pending in state court (Case No. 03-CI-271), although the City has stayed prosecution of that citation pending resolution of this case.  Administrative proceedings before the Liquor Commission were also initiated by the City against Mulligan's as a result of the citation.  The administrative charge before the Liquor commission also remains stayed pending resolution of this case.  The City acknowledges that should its position prevail in this litigation, both the administrative and the judicial charges will be pursued.

Plaintiff then filed this complaint, alleging that the City's enforcement of the Ordinance infringes upon its own freedom of speech as well as that of certain patrons and independent contractors, seeking the profits that were allegedly lost when the wet t-shirt contests were no longer held, as well as an injunction prohibiting enforcement of the

---

[2]The exact words used in her affirmative answer are in dispute.  That dispute is not material to the issues before this court.

6

ordinance against the Plaintiff.  The court has denied two previous sets of cross motions for summary judgment.  Now before the court are the third set of cross motions.  This order follows.

## MUNICIPAL POLICY

Not much needs to be said about the City's argument that there can be no municipal liability here because assistant Corporation Counsel James Murphy was not a policy making official of the City.  This case revolves entirely around prosecution of the Plaintiff for violation of the City's ordinances.  If the ordinance is constitutional, Defendant wins.  If not, then Plaintiff wins.  What Murphy may have opined at one time or another does not change the fact that this case is about an Ordinance.  There can be no more certain expression of municipal policy than that.  To the extent that Defendant argues this point, the City's motion is denied.

## FACIAL CHALLENGE

The First Amendment provides in part that "Congress shall make no law ... abridging the freedom of speech, or of the press." Section One of the Fourteenth Amendment incorporated this provision and so it prohibits state government from abridging these freedoms as well.  DiMa Corp. v. Town of Hallie, 185 F.3d 823, 826 (7th Cir.1999), citing Gitlow v. New York, 268 U.S. 652, 666 (1925);  Liquormart, Inc. v. Rhode Island, 517 U.S. 484, 489 n. 1 (1996).

Where there is a facial challenge to a municipal ordinance, the threshold question is whether the challenged law is content-based, that is, whether the law regulates speech based on the ideas or messages it expresses. "Content-based regulations are presumptively invalid." R.A.V. v. City of St. Paul, 505 U.S. 377, 382 (1992).  On the other

hand, government is given much more leeway when its content-neutral regulations happen to limit some speech. See United States v. Wilson, 154 F.3d 658, 663 (7th Cir.1998) ("If a statute is content-based, it must survive strict scrutiny to be constitutional. If a statute is content-neutral, it is subject only to intermediate scrutiny."). Therefore, government may impose reasonable time, place, and manner restrictions if they are "justified without reference to the content of the regulated speech." Ward v. Rock Against Racism, 491 U.S. 781, 791, (1989) (internal quotation marks omitted). See also, DiMa, 195 F.3d at 827.

As the Seventh Circuit explained in DiMa, the Supreme Court applies yet a different kind of analysis to the category of speech at issue here: sexually explicit, non-obscene expressions. 185 F.3d at 827. Because this speech is not obscene, government may not simply proscribe it. Id. See Schad v. Borough of Mt. Ephraim, 452 U.S. 61, 66 (1981) ("[A]n entertainment program [may not] be prohibited solely because it displays the nude human figure."). But as the content of the speech approaches obscenity, the level of First Amendment protection for that speech decreases. See Young v. American Mini Theatres, Inc., 427 U.S. 50, 70-71 (1976) (plurality) ( "Even though the First Amendment protects communication in this area from total suppression, we hold that the State may legitimately use the content of these materials as the basis for placing them in a different classification from other motion pictures."); City of Renton v. Playtime Theatres, Inc., 475 U.S. 41, 49 (1986)("at least with respect to businesses that purvey sexually explicit materials, zoning ordinances designed to combat the undesirable secondary effects of such businesses are to be reviewed under the standards applicable to 'content-neutral' time, place, and manner regulations."

Time, place, and manner restrictions  do not violate the First Amendment (i.e. they are "reasonable") if they: (1) are justified without reference to the content of the regulated speech; (2) are narrowly tailored to serve a significant government interest; and (3) leave open ample alternative channels for communication of the information. Ward, 491 U.S. at 791; DiMa, 185 F.3d at 828;  Schultz v. City of Cumberland, 228 F.3d 831 (7th Cir. 2000). The first element has created some confusion, because ordinances dealing with adult entertainment seem to be content based.  However, the Supreme Court has made clear that, while the ordinances seem to be content based, they will be treated as being content neutral.  See discussion in DiMa, 185 F.3d at 828.

The general First Amendment test is therefore modified for adult entertainment cases, as follows:  a restriction imposed on adult entertainment is valid if (1) it was enacted pursuant to a legitimate governmental power; (2) it does not completely prohibit adult entertainment; (3) it is not aimed at the suppression of expression but at combating the negative secondary effects caused by adult entertainment establishments; and (4) it is designed to serve a substantial government interest, is narrowly tailored, and reasonable alternative avenues of communication remain available.   44 Liquormart Inc. v. Rhode Island, 517 U.S. 484 (1996); Ben's Bar v. Village of Somerset, 316 F.3d 702, 722-28 (7th Cir. 2003); Joelner v. Village of Washington Park, 378 F.3d 613 (7th Cir. 2004).  If a regulation fails to satisfy either step two or three, strict scrutiny applies.  Id. at 622-3. Otherwise, step four, which "encapsulates the intermediate standard of scrutiny" governs the analysis.  Id.

This Ordinance, enacted with an eye toward liquor regulation, was a proper exercise of police power.  The first element is satisfied.  And the ordinance does not completely

prohibit adult entertainment; it simply requires a license.  The second element is satisfied as well.  The dispute here revolves around the third element, namely whether the version of the ordinance that is being enforced against Plaintiff was aimed at the suppression of expression or at combating the negative secondary effects caused by adult entertainment establishments.  Resolution of that dispute dictates the level of scrutiny the court will utilize in evaluating this Ordinance.

Combating the generally-well-documented, undesirable secondary effects of adult-oriented establishments is a "significant government interest."  Renton, 475 U.S. at 50.  However, where an ordinance asserts as its focus such an interest, the municipality bears the burden of showing that there is evidence supporting its proffered justification.  DiMa, 195 F.3d at 829, citing J & B Entertainment, Inc. v. City of Jackson, 152 F.3d 362, 370-71 (5th Cir.1998) (city bears burden both of production and persuasion).  This burden is not overwhelming: the Supreme Court has stated that "[t]he First Amendment does not require a city, before enacting such an ordinance, to conduct new studies or produce evidence independent of that already generated by other cities, so long as whatever evidence the city relies upon is reasonably believed to be relevant to the problem that the city addresses."  Renton, 475 U.S. at 51-52, quoted in DiMa, 185 F.3d at 829.

The municipality must "identify the justifying secondary effects with some particularity, ... [and] offer some record support for the existence of those effects and for the Ordinance's amelioration thereof."  Id.  See also, G.M. Enterprises, Inc. v. Town of St. Joseph, 350 F.3d 631, 637 (7th Cir. 2003).  "Federal courts evaluating the 'predominant concerns' behind the enactment of a statute, ordinance, regulation, or the like, may do so by examining a wide variety of materials including, but not limited to, the text of the

regulation or ordinance, any preamble or express legislative findings associated with it, and studies and information of which legislators were clearly aware." R.V.S., L.L.C. v. City of Rockford, 361 F.3d 402, 410 (7th Cir. 2004), quoting Ben's Bar, 316 F.3d at 723, n. 28. See also Ranch House Inc. v. Amerson, 238 F.3d 1273, 1280 (7th Cir.2001); City of Erie v. Pap's A.M., 529 U.S. 277 (2000)(considering the preamble as evidence of legislative purpose).

The requisite record, for purposes of summary judgment, may include evidence that the city did not have when the ordinance was enacted. DiMa. 185 F.3d at 829-30. In DiMa, the town had relied almost exclusively on the experience of another city as reported in a District Court case. That record, described as "fairly meager" by the Seventh Circuit, was nonetheless sufficient to survive summary judgment. At the same time, however, the DiMa court also cautioned that "a municipality defending a more substantial set of regulations [should] create a more substantial record in support of summary judgment." Id. at 831. In other words, so long as the municipality had some evidence before it when the ordinance was considered, that evidence can be later supplemented should litigation arise over the ordinance. Supplementation, however, presumes the pre-existence of some body of evidence that can be supplemented; litigation does not provide the municipality with a blank slate to create that evidence after the fact. See, Peek-A-Boo Lounge of Bradenton v. Manatee County, 337 F.3d 1251, 1267-68 (11th Cir. 2003)(reviewing case law from all Circuits, finding that all Circuits but the Third Circuit require evidence of secondary effects prior to enactment).

The Seventh Circuit in Joelner v. Village of Washington Park, 378 F.3d 613 (7th Cir. 2004) elaborated upon this issue, noting that while there need be "very little evidence,"

11

there must be "some reasonably relevant evidentiary basis" from which it may be concluded that the municipality's action was reasonable.  378 F.3d at 623-24 and n.7.  In <u>Joelner</u>, the plaintiff was appealing the denial of a preliminary injunction, a significantly different procedural posture than the case before this Court.  The ordinance in question limited the number of adult entertainment venues and it set up a licensing fee scheme.  Other than the preamble to the ordinance, there was no evidence in the record before the Seventh Circuit regarding support for the ordinance.  After affirming denial of preliminary injunctive relief, the Court of Appeals commented in *dicta*,  about the limited record before it and the possibilities that might arise on remand, noting:

> The record does not contain any legislative findings or any indication that the Board considered studies or other information *before enacting* [the] Ordinance...Without this information, we cannot now determine if intermediate scrutiny applies.  But we also note that when the matter is fully considered upon remand, if the Village is unable to point to any legislative findings, other than the preamble noted above, or some outside information upon which the Board relied, [then the Ordinance was likely unconstitutional].

On the other hand, a plaintiff cannot succeed merely by showing that other contradictory evidence exists or that other conclusions might have been drawn from that evidence.  <u>DiMa.</u> , 185 F.3d at 829.  The only pertinent question for the court is whether there is and was evidence supporting the municipality's conclusions; the court is not to judge the wisdom of those conclusions.  <u>Id.</u>

 As this Court has noted in an earlier order, the actual motives of those who enact an ordinance are irrelevant to First Amendment analysis.  "It is a familiar principle of constitutional law that this Court will not strike down an otherwise constitutional statute on the basis of an alleged illicit legislative motive."  <u>DiMa</u>, 195 F.3d at 828, citing <u>United States v. O'Brien</u>, 391 U.S. 367, 383 (1968); and <u>City of Renton v. Playtime Theatres, Inc.</u>, 475

U.S. 41, 47-48 (1986).  As the DiMa Court stated, "we do not ask whether the motives of the Board can be justified as content-neutral time, place, and manner restrictions, but rather whether the ordinance itself can be so justified."  185 F.3d at 829.

Plaintiff challenges the evidence that the City proffers to support its enactment of this Ordinance, arguing that there was no evidence at all in the City's legislative history with respect to its conclusion that non-nude but sexually oriented conduct has deleterious secondary effects.  It was only after this suit was filed that the Ordinance was amended with an eye to enhancing the basis for the legislative determination that such effects exist.

In its earlier order, this court applied the analysis used in R.V.S. v. City of Rockford, 361 F.3d 402 (7th Cir. 2004).  In that case, the Court of Appeals considered an ordinance that required special use permits for non-nude nightclubs and that banned issuance of those permits for clubs in proximity to churches, schools, residential districts or other licensed nightclubs.  Based on evidence presented by the City as to decreased property values, more crime, health risks, and prostitution, the court determined that the primary purpose of the ordinance was to combat the secondary effects of the expressive conduct.  The constitutionality of the statute was therefore to be determined by application of intermediate scrutiny.

At the time this Court ruled on earlier motions for summary judgment, it was unable to determine whether the ordinance was to be reviewed under strict or intermediate scrutiny, because the City of Peoria had submitted absolutely no such evidence.  Now the City has apparently produced what it has, or at least it has been given the opportunity to do so.  The evidentiary record in this case as to the 2001 Ordinance and its predecessors consists of a Nov. 6, 2001, Memorandum from Corporation Counsel Randall Ray to the City

Council and the Mayor explaining the reason for the 2001 amendment; minutes of the November 6, 2001 City Council meeting, and copies of the 1977, 1986, 2001 and 2005 versions of the Ordinance in question.  It is evident from reviewing those materials that there was no study, no examination of the case law, and nothing else other then generic statements before the counsel at the time they adopted the most recent version of the ordinance.

Other than a wholly unsupported statement of purpose - which is not evidence at all - the legislative history of the 2001 ordinance is essentially a blank.  In the absence of a factual basis for the statement of purpose, the 2001 Ordinance defines its predominant concern with conduct that is entitled to some level of First Amendment protection, and it does so by reference to the content of that speech.  In the absence of evidence, the 2001 Ordinance cannot be considered content neutral, under the First Amendment law discussed in prior orders.  See also, U.S. v. Playboy Entertainment Group Inc., 529 U.S. 803 (2000)(regulation that restricted speech defined by its content is the "essence of content-based regulation.").

If a statute regulates speech based on content it must be "narrowly tailored to promote a compelling governmental interest."  Id. at 813.  No compelling interest has been proffered by the City.  The only interest asserted - abatement of deleterious secondary effects - has never been found to be "compelling."  Moreover, it cannot be said that this Ordinance is narrowly tailored to abate those secondary effects of adult entertainment and alcohol.  As pointed out by Plaintiff, the reach of the Ordinance is well beyond paid entertainers at licensed establishments.  From its language, it could also apply to employees and patrons of the bar, prohibiting forms of dress that are culturally acceptable

in some circles.  The Ordinance as it existed prior to the 2005 amendment simply cannot survive strict scrutiny.

Simply stating that an ordinance is designed to combat secondary effects is insufficient.  In fact, the City does not even make an effort to defend its 2001 Ordinance, relying instead on the 2005 amended Ordinance (see below).  Accordingly, I conclude that the 2001 Ordinance was facially invalid and therefore unenforceable.  The Plaintiff's motion for summary judgment as to that issue is therefore allowed, and the City's corresponding motion is denied.

**AMENDED 2005 ORDINANCE**

With respect to the 2005 Ordinance, it recites the evidence that was apparently considered by the City Council when the amendment was enacted.  The problem with this ordinance is that the "Findings" and "Purpose" sections do not support the City's regulation of non-nude conduct.  For example, the ordinance specifically cites the "deleterious secondary effects of nude conduct in liquor establishments" and states that "the express purpose of the ordinance is to regulate nude conduct".  And the vast majority of the case law cited involved public nudity, not the type of conduct at issue here.  No nude conduct is involved in the factual background of this case.

The only part of the Statement of Purpose that seems to apply to this situation is the following: "Similarly, it is neither the intent nor effect of this ordinance to restrict or deny access by adults to semi-nude conduct protected by the First Amendment."  Yet that is precisely what is at issue in this case: the City continues to argue that the 2005 Ordinance would apply to Mulligan's wet t-shirt contest.

15

I therefore conclude that the 2005 amendment to the Ordinance did not cure its facial invalidity.  The new Ordinance may not be enforced against Mulligan's either.

CONCLUSION

For each of the reasons explained above, the City's motion for summary judgment is denied, and the plaintiff's motion for partial summary judgment is granted.  The record is incomplete with respect to damages, so judgment is not to be entered at this time.

This case is set for a telephone conference on Tuesday, November 22, 2005 at 11:30 a.m. at which time the parties are to be prepared to address the means for prove up of damages.

ENTER this 31st day of October 2005.


JOHN A. GORMAN
UNITED STATES MAGISTRATE JUDGE